## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL NO. 3:06CV418-R

| | | |
|---|---|---|
| TANYA ORRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| MOTORCARPARTS OF | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion to Compel Plaintiff to Fully and Completely Respond to Defendant's Interrogatories and Requests for Production" (document #17) filed October 22, 2007, and "Motion to Compel the Production of Computers for Inspection and for Order Prohibiting Further Destruction of Evidence" (document #19) filed October 26, 2007; as well as the parties' associated briefs and exhibits. See documents ## 18, 20, and 23-26.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the subject Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the Court will grant in part and deny in part the Defendant's Motions, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 17, 2006, the Plaintiff, Tanya Orrell, a resident of Charlotte, North Carolina, filed her Complaint, seeking to recover damages and equitable relief from her former employer, Defendant Motorcarparts of America, Inc. ("MPA"), a New York corporation headquartered in

California. The Plaintiff seeks damages for sexual harassment and gender discrimination, alleging a hostile work environment, wrongful discharge, and retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII") and the public policy of North Carolina as codified in N.C. Gen. Stat. § 143-422.1, as well as for North Carolina common law claims.

Although the Plaintiff was first hired by the Defendant in February 1998 to work in one of its California offices, the events about which the Plaintiff complains allegedly began in early 2002 and continued through her termination on April 29, 2005, during a time when she was traveling frequently but based out of the Defendant's Charlotte office.

The Plaintiff alleges that she was sexually harassed by several male co-workers and/or supervisors, as well as some of the Defendant's customers. Most significantly for the purposes of the subject Motions, the Plaintiff contends that some of the harassment was in the form of "pornographic" and "offensive" emails that she was sent by co-workers and customers. The Plaintiff testified at her deposition, discussed below, that she received an "overwhelming number" of those emails, "even hundreds" of them. Although the Plaintiff received these emails on the laptop computer that the Defendant provided, she testified that it was her practice was to forward those emails to her home email address and store them on her home computer. The Plaintiff also testified that she forwarded some of these offensive emails to her husband, Don Orrell, some of which he received on his computer at his job with the Bendix corporation.[1]

Shortly after receiving notice of her termination, but prior to returning her work laptop

---

[1]The Plaintiff's and her husband's depositions were taken, respectively, on October 16 and 17, 2007, and the transcripts were not available for inclusion as exhibits with the present Motions. The Defendant has made numerous references to that testimony in its briefs, however, stating that defense counsel took detailed notes during the depositions, and in her briefs, the Plaintiff does not presently dispute the Defendant's account of that testimony.

computer to the Defendant, the Plaintiff, with the aid of her husband, had the laptop's hard drive "wiped," that is, the information on the drive was irretrievably erased.[2]  The Plaintiff testified that her purpose in "wiping" the hard drive was to prevent any of her personal information, such as confidential financial information, being returned to the Defendant.   Presenting a slightly different version of events, Mr. Orrell testified in his deposition that although he ultimately took the computer to an information technology ("IT") consultant who "wiped" the computer with a program entitled "Evidence Eliminator," he initially contemplated taking the computer to a "shooting gallery" where it would be destroyed.

Sometime prior to August 21, 2007, the Defendant served its "First Set of Interrogatories and Requests for Production of Document," including concerning the Defendant's Motion to Compel the Production of Computers, Requests for Production 1, 13 and 16 which sought (emphasis added):

> Request to Produce 11.  Any notebooks, calendars, notes, memoranda, letters, diaries, videotapes, compact discs, emails, or audiotapes which relate to your employment at MPA....

> Request to Produce 13.  Any notebooks, calendars, notes, memoranda, letters, diaries, videotapes, compact discs, emails, or audiotapes which relate to the claims you have made in this case....

> Request to Produce 16.  Any and all documents concerning MPA retained by you or obtained by you in any manner during or from your employment with MPA.

On August 21, 2007, the Plaintiff served its responses to the Defendant's written discovery requests.  Although the Plaintiff does not contest that any emails responsive to the requests quoted above are properly discoverable, she initially produced only a very small number of printed emails. The record does not reflect the exact number of emails produced at this stage, but in its briefs, the

---

[2]Sometime later the Defendant performed a forensic examination of the laptop which confirmed that no information can be recovered from the hard drive.

Defendant characterizes this initial production as being only "1%" of the total number of documents the Plaintiff produced after her deposition, discussed below. The Defendant also maintains, and the Plaintiff has not disputed, that the emails produced were in a format that does not reveal whether the Plaintiff was the author or the recipient.

The Plaintiff also initially produced a single disk which she affirmed contained the responsive information that had been "wiped" from her work laptop computer. When the Defendant accessed the disk, however, it did not contain any emails.

In addition to failing to produce the "hundreds" of offensive pornographic emails that she claims to have received, the Defendant argues that the Plaintiff's initial discovery responses were deficient in several other ways. Counsel engaged in lengthy attempts to resolve these disputes and were successful as to some of them; the items remaining in dispute are the subject of the Defendant's "Motion to Compel Plaintiff to Fully and Completely Respond to Defendant's Interrogatories and Requests for Production" discussed below.

On the evening of October 15, 2007, the night before her deposition was to be taken, the Plaintiff's counsel served, by facsimile, additional discovery responses, including 22 pages of emails dating from 2003 and 2004 which the Plaintiff has contended support her claims.

On October 16, 2007, the Defendant deposed the Plaintiff. In addition to giving the testimony described above, the Plaintiff testified that her ability to make any further production of documents was hampered because her home computer had "crashed" in August 2007. The Plaintiff affirmed, however, that all responsive documents that had been "backed up" from the work laptop or recovered from the Orrells' home computer's hard drive by a third-party IT consultant had, at that time, already been produced to the Defendant.

On October 17, 2007, Mr. Orrell was deposed. In addition to conceding that he had contemplated destroying the laptop, he further contradicted the Plaintiff's testimony by testifying that he gave to defense counsel another back up disk from the work laptop computer (containing no emails) and that he "could not confirm" the total number of work laptop back up disks, that is, he testified that there could be three or even more back up disks. Regarding the home computer, Mr. Orrell testified that after its August 2007 crash, he had taken the computer to two IT consultants, and that the second consultant had successfully recovered "some" of the information, which has been produced.

In response to the apparent contradictions between the Orrells' testimony and the Plaintiff's other discovery responses, and to other ongoing disputes over those responses, on October 22 and 26, 2007, respectively, the Defendant filed its "Motion to Compel Plaintiff to Fully and Completely Respond to Defendant's Interrogatories and Requests for Production" and "Motion to Compel the Production of Computers for Inspection and for Order Prohibiting Further Destruction of Evidence."

Concerning the latter Motion, the Defendant seeks an Order requiring the Plaintiff and Mr. Orrell to produce for forensic examination, at their expense, their home computer, Mr. Orrell's work computer (which is owned by Bendix), and a computer that is owned by Applied Nutriceuticals, which is described in the record as one of the Orrells' "side businesses." The Motion also seeks an Order prohibiting the Plaintiff or Mr. Orrell from further erasing, deleting, or otherwise destroying any evidence related to or arising from this case.

On November 12, 2007, in apparent response to the subject Motions, the Plaintiff produced to the Defendant approximately 10,000 printed pages of documents, which the Plaintiff now contends were recovered following yet another attempt to restore the home computer's hard drive.

As with the Plaintiff's earlier production, however, to the extent that any additional emails were produced, they are in a format that does not show their origin or recipient. At the same time, the Plaintiff produced yet a third backup disk from her work laptop, which like the first two backup disks did not contain any of the emails that she claimed she had received on that computer.

In her Response to the Defendant's Motion to Compel the Production of Computers for Inspection, the Plaintiff objects to producing any of the computers on the grounds of privacy, including credibly maintaining that both the Applied Nutriceuticals and Bendix computers contain the respective company's proprietary and confidential information. Additionally, the Plaintiff points out that the Applied Nutriceuticals computer was first used more than one year <u>after</u> she was terminated by the Defendant, and therefore is not a repository for any relevant emails. Finally, the Plaintiff requests that if any computer is ordered produced for forensic examination, the Defendant bear the cost of the examination.

Regarding the Defendant's Motion to Compel complete responses to its Interrogatories and Requests to Produce, although the Plaintiff's belated supplemental production evidently addressed some of the Defendant's other concerns, there is a continuing dispute over the sufficiency of the Plaintiff's responses to the following requests:

Interrogatory 3. Provide the name and address of each and every person who has knowledge of any relevant facts concerning any claim or defense in this lawsuit. For each such person, give a detailed description of the substance of that person's knowledge.

Interrogatory 7. Please give an account, itemized as fully and as carefully as you can, of all damages and expenses which you claim to have sustained as a result of defendant's alleged wrongful conduct.

Interrogatory 8. Please describe all efforts to obtain other employment made by you since you first began work for MPA in 2002. Please provide the name, address, and

telephone number of each place where you sought employment, state the type of employment you sought, the date(s) on which you sought employment, whether you completed an application, whether you were interviewed, and the result of your efforts.

Interrogatory 9.  For each company or individual for whom you have worked since January 1, 1997, provide the name, address, and telephone number of each company and/or individual, the date(s) of your employment, the name of your immediate supervisor, your rate of pay, and the reason you are no longer employed (if applicable).

Interrogatory 18.  Identify each and every computer you have used from February 1998 to present, including desktop computers, PDAs, portable, laptop, and notebook computers.  For purposes of this Interrogatory, the phrase "identify" means to state: (1) the owner and date of purchase of the computer in question; (2) brand, model, and serial number of the computer; (3) all purpose(s) for which you used the computer; (4) where this computer is presently located; and (5) whether you used the computer in connection with your work at MPA or to discuss either your employment at MPA or the claims brought in this lawsuit.

Interrogatory 19.  List in chronological order all e-mail addresses, email accounts, and IP addresses (whether personal or business) used by you or by anyone in your residence from February 1998 to the present.

Interrogatory 20.  Identify each computer which you have had re-formatted, had the operating system reinstalled in, or which you have had scrubbed, wiped clean, or overridden and, for each such computer, state the date on which each drive was wiped, the method or program used (e.g., WipeDisk, WipeFile, BurnIt, Data Eraser, etc.), the identity of the person performing that task, and the reason the computer was scrubbed, wiped clean, or overridden.

Interrogatory 22.  Describe in detail your educational background, and, for all courses taken since February 1998, specifically list by name the course, educational institution, and dates of attendance.

Request for Production 8.  All documents which reflect any income, compensation, employment benefits, or other monies you have received since you ceased working at MPA in October 2000, including federal and state income tax returns, W-2 forms, pay stubs, and other documents which would reflect earnings from employment, self-employment, partnerships, or other business ventures.

With regard to the Plaintiff's damages calculation (Interrogatory 7), the Plaintiff contends

that although she is still in the process of calculating her damages, she has produced her tax returns, which the Defendant may use to perform its own calculation of the Plaintiff's lost wages.

The Plaintiff raised general objections to the remaining requests, arguing that they are overbroad and unduly burdensome, and for all except Interrogatory 3 (identification of potential witnesses and their scope of knowledge), included a boilerplate objection that the requests are not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding these objections, however, the Plaintiff responded to each request, albeit minimally in some instances, as detailed below.

The Plaintiff's response to Interrogatory 3 consisted of listing potential witnesses, but for many of them gave no indication of what knowledge each person potentially has, except to state that the  person "has knowledge of sexual harassment and hostile work environment" or "ha[d] knowledge of [Plaintiff's] reporting or complaints of harassment."

Plaintiff responded to Interrogatory 8 (efforts to find other employment) with all responsive information related to her post-termination efforts to secure employment, but has refused to produce information concerning her pre-termination efforts to locate another job.

In response to Interrogatory 9 (prior employment), the Plaintiff referred the Defendant to several different versions of her resume, and offered "more detailed information" concerning her reasons for leaving her former employers.  In its Reply, the Defendant notes that the Plaintiff's resume is inconsistent with her deposition testimony concerning her dates of employment at Prestolite Wire.

Plaintiff's response to Interrogatory 18 (computers used) addressed only her home computer and Mr. Orrell's computer at Bendix, but did not address the Applied Nutriceuticals  computer or

another personal computer that the Defendant contends the Plaintiff donated to Goodwill Industries in July 2006.

The Plaintiff contends that she has responded fully to Interrogatory 19 (email addresses used). In its Reply, the Defendant states that in three of those email addresses, the Plaintiff's name was apparently misspelled ("Tonya" instead of "Tanya") and requests that the Plaintiff be required to clarify the correct spelling of those addresses.

Plaintiff responded to Interrogatory 20 (all computers "wiped" by Plaintiff or her husband) by explaining that she has now produced all available backup disks from her work laptop computer, but her response was silent as to whether other computers (or evidence on other computers) had been "wiped."

The Plaintiff states that she has now responded "in detail" to Interrogatory 22 (educational background). In its Reply, the Defendant offers that if Plaintiff will state in a verified response that she has taken no courses since 1998 other than courses offered by a real estate broker related to working as a realtor, the Defendant will be satisfied with Plaintiff's response. At issue apparently is an inconsistency between one version of the Plaintiff's resume which indicated that Plaintiff "expected" to graduate at some future date from the Masters of Business administration program at the University of North Carolina at Charlotte and the Plaintiff's testimony that she had not actually begun that program.

Finally, the Plaintiff contends that she "has submitted the documents requested" by Request for Production 8. The Defendant points out, however, that absent from the Plaintiff's production is documentation of the Plaintiff's post-termination income at Keller Williams Realty and from the Orrells' business, Applied Nutriceuticals, which is relevant and material to Plaintiff's duty to

mitigate her lost wages.

The Defendant's Motions have been fully briefed as set forth above and are therefore ripe for disposition.

## II. <u>DISCUSSION</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. <u>See</u> <u>Herbert v. Lando</u>, 441 U.S. 153, 177 (1979); <u>and</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. <u>See</u> Fed. R. Civ. P. 26©.

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. <u>See, e.g.</u>, <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 929 (4th Cir. 1995) (district courts' rulings on discovery motions reviewed on appeal for abuse of discretion); <u>Erdmann v. Preferred Research Inc.</u>, 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); <u>and</u> <u>LaRouche v. National Broadcasting Co.</u>, 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

Concerning the Defendant's Motion to Compel the Plaintiffs to produce computers for a forensic examination of their hard drives, it is well settled that a party has a duty to preserve evidence when the party is placed on notice that the evidence is relevant to the litigation or when the party

should have known that the evidence may be relevant to future litigation. <u>Silvestri v. GMC</u>, 271 F. 3d 583, 591 (4th Cir. 2001). The duty to preserve encompasses electronic communications and documents, such as emails, or documents created by computer, such as invoices. <u>See</u> <u>Zubulake v. UBS Warburg, LLC</u>, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003) (holding in employment discrimination case that defendant company had duty to preserve emails related to claims asserted by plaintiff, and ultimately requiring defendant to restore 77 backup disks in order to search for and produce those emails). In other words, "once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place 'a litigation hold' to ensure the preservation of relevant documents." <u>Zubulake</u>, 220 F.R.D. at 218. <u>Accord</u> <u>Thompson v. United States Dept. of Housing and Urban Development</u>, 219 F.R.D. 93, 100 (D. Md. 2003) (party had duty not to delete responsive emails, discovery requests for deleted emails were proper).

The fact that the Plaintiff's home computer allegedly "crashed" – as opposed to having been "wiped" as the work laptop was – in no way eliminates the Plaintiff's burden to do all she could under those circumstances to preserve evidence. <u>Teague v. Target Corp</u>., ___ F. Supp. 2d ___, ___ (W.D.N.C. Apr. 4, 2007) (electronic information contained on plaintiff's home computer was "clearly relevant" to claims in plaintiff's gender discrimination case; where plaintiff had discarded the computer after it "crashed," court ordered that adverse inference jury instruction was appropriate).

Moreover, Fed. R. Civ. P. 34 permits a party to "inspect and copy, test, or sample any tangible things" which are within the scope of discovery under Rule 26, including computer hard drives of the computers which generated emails that were later improperly deleted. <u>See</u> <u>Antioch Co. v. Scrapbook Borders, Inc.</u>, 210 F.R.D. 645, 652 (D. Minn. 2002) (permitting "mirror imaging" of

a hard drive under Rule 34 in order to retrieve deleted computer records, including email); Simon Property Group L.P. v. MySimon, Inc., 194 F.R.D. 639, 640 (S.D.N.Y. 2000) (same); and Playboy Enterprises v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999) (same).

The undersigned also notes that recently in this District, where there were inconsistencies in the evidence produced during discovery by the plaintiff in a breach of employment contract case as to whether the responsive information on his home computer was identical to the information on his former work computer, the plaintiff was compelled to produce his home computers for forensic examination by the defendant. Hardin v. Belmont Textile Machinery Co., ___ F. Supp. 2d ___, ___ (W.D.N.C. Aug. 7, 2007).

Although the Defendant has not cited any authority or made any argument in support of its request that the Plaintiff bear the expense of the forensic examination, Fed. R. Civ. P. 26(b)(2)(c) provides factors that the Court should consider in determining whether to order expensive electronic discovery and whether and how to apportion the costs between the parties:

> [whether] (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

See also Fed. R. Civ. P. 37(f) ("Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.")

Applying these legal principles to the facts in this case, the undersigned finds that each of the

subject Interrogatories and the single Request for Production "appear[] reasonably calculated to lead to the discovery of admissible evidence," and that the Plaintiff must respond fully to those discovery requests.[3] Fed. R. Civ. P. 26(b)(1). Specifically, the Plaintiff may not limit the Defendant's discovery of persons having knowledge of the facts and issues in this case (Interrogatory 3) to the persons' names and a simple statement that he or she "has knowledge of sexual harassment and hostile work environment" or "ha[d] knowledge of [Plaintiff's] reporting or complaints of harassment." Rather, as the Defendant requested, the Plaintiff's response must be detailed, including the specific act of harassment that the witness committed or observed and/or the specific contents of any complaint that the witness received or observed, as well as the time, date and location of these events.

Similarly, the Plaintiff must be required to fully supplement her response to Interrogatory 7 (calculation of damages) and state what she contends are her damages as a result of the Defendant's alleged unlawful conduct, not limited to lost wages, but also including any damages she seeks for medical or counseling expenses, other pecuniary losses, and damages attributed to pain and suffering or other non-pecuniary losses.

The Plaintiff may not limit her response to Interrogatory 8 (efforts to find other employment) to only her post-termination efforts to secure employment, but must produce all responsive information related to efforts she made, if any, to find another position while she was still employed by the Defendant.

---

[3]Although the undersigned is compelling production of all discovery that remained at issue after the filing of the Defendant's reply brief, because the Defendant's "Motion to Compel Plaintiff to Fully and Completely Respond to Defendant's Interrogatories and Requests for Production" initially targeted requests to which the Plaintiff now has fully responded, the Defendant's Motion will be granted in part and denied in part.

The Plaintiff must also supplement her responses to Interrogatory 9 (prior employment), Interrogatory 19 (email addresses used), and Interrogatory 22 (educational background), to address and/or correct the inconsistencies in her responses to those requests as discussed above.

The Plaintiff will also be compelled to supplement her responses to Interrogatory 18 (computers used) and Interrogatory 20 (all computers "wiped" by Plaintiff or her husband) to fully identify (as she has already attempted to do during her deposition) every computer that she used during the relevant period and to state clearly whether she or her husband have "wiped" any other computer in addition to her work laptop, or have otherwise deleted, erased, or destroyed any other evidence in this case.

Finally as to the Defendant's Motion to Compel complete responses to its paper discovery, the Plaintiff must supplement her response to Request for Production 8. As the Defendant pointed out in its Reply brief, the Plaintiff's post-termination income, including income from Keller Williams Realty and/or from the Orrells' business, Applied Nutriceuticals, is relevant and material to Plaintiff's duty to mitigate her lost wages.

Additionally, the undersigned concludes that the Defendant is entitled to conduct a forensic examination of the Orrells' home computer, at the Defendant's expense, and to an Order prohibiting the destruction of additional evidence. Accordingly, the Defendant's "Motion to Compel the Production of Computers for Inspection and for Order Prohibiting Further Destruction of Evidence" will be <u>granted in part</u> and <u>denied in part</u>. <u>Accord</u> <u>Hardin</u>, ___ F. Supp. 2d at ___ (where there were inconsistencies in the evidence produced during discovery by plaintiff in breach of employment contract case as to whether responsive information on his home computer was identical to information on his former work computer, plaintiff was compelled to produce home computers

14

for forensic examination by defendant); Antioch Co., 210 F.R.D. at 652 (permitting "mirror imaging" of a hard drive under Rule 34 in order to retrieve deleted computer records, including email); Simon Property Group L.P., 194 F.R.D. at 640; and Welles, 60 F. Supp. 2d at 1053 (same).

Due to the concerns that the Plaintiff raised about the existence of confidential proprietary information on the other subject computers (Applied Nutriceuticals and Bendix), the initial forensic examination will be confined to the home computer. This is particularly appropriate regarding the Bendix computer because the record does not show that Bendix has ever received notice of the Defendant's attempt to seize and examine its property. Should the ordered examination reveal, however, that there reasonably may be otherwise unavailable responsive information on either of these computers, the Defendant may renew its Motion, giving proper notice to the owner(s).

Similarly, if the initial examination reveals evidence of bad faith by the Plaintiff, the Defendant may renew its Motion for costs.

Finally, the undersigned specifically cautions the Plaintiff that any failure to comply fully and timely with this Memorandum and Order, or further failure to respond to the Defendant's reasonable discovery requests or to comply with this Court's other Orders, the Local Rules, or the Rules of Civil Procedure may result in the imposition of sanctions. **Sanctions can include the Plaintiff (and/or Plaintiff's counsel) being required to pay the Defendant's costs, including reasonable attorney's fees, and <u>may also include dismissal of this lawsuit with prejudice</u>.**[4]

---

[4]The Fourth Circuit has emphasized the significance of both establishing a history of dilatory action and warning to the offending party of what may follow prior to dismissing the action. See, e.g., Hathcock v. Navistar Int'l Transp. Corp., 55 F.3d 36, 40 (4th Cir. 1995); Choice Hotels Int'l v. Goodwin & Boone, 11 F.3d 469, 473 (4th Cir. 1993); and Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir. 1987).

# III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1.      The Defendant's "Motion to Compel Plaintiff to Fully and Completely Respond to Defendant's Interrogatories and Requests for Production" (document #17) and "Motion to Compel the Production of Computers for Inspection and for Order Prohibiting Further Destruction of Evidence" (document #19) are **GRANTED IN PART** and **DENIED IN PART**, that is:

A. On or before January 17, 2008  the Plaintiff shall serve complete supplemental discovery responses to Interrogatories 3, 7-9, 18-20, and 22, and Request for Production 8, as detailed above.

B. On or before December 21, 2007 the Plaintiff shall produce to the Defendant her home computer for a forensic examination, and upon completion of the examination, the Defendant shall promptly return the computer to the Plaintiff.

C. If the Defendant's examination of the Plaintiff's home computer reveals any evidence of destruction or alteration of evidence, other than that discussed above, or reveals that specific responsive information not retrievable from the home computer is reasonably believed to be available on the Applied Nutriceuticals or Bendix computers, the Defendant may renew its Motion for production of either or both computers.  Provided, however, that if the Defendant seeks production of the Bendix computer, it must give the Bendix corporation timely notice of and an opportunity to respond to the Motion.

D. If the Defendant's examination of the Plaintiff's home computer reveals any evidence of destruction or alteration of evidence, other than that discussed above, the Defendant may renew its Motion to recover the costs of any subsequent forensic examinations which may be thereafter required.

      E. The Defendants are **GRANTED** a Protective Order and the Plaintiff, Tanya Orrell, her husband, Don Orrell, and any other person or entity acting on their behalf or within their control are **ORDERED** not to erase, delete, or otherwise destroy or alter any information, stored electronically or otherwise, that is responsive to any of the Defendant's discovery requests or that may otherwise be relevant to the claims asserted in this action.

    F. The Defendant's Motions are **DENIED** in all other respects.

    2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Martin K. Reidinger.

       **SO ORDERED**.

                          Signed: December 5, 2007

                        Carl Horn, III
                        United States Magistrate Judge